**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State v. Anderson,* **Slip Opinion No. 2016-Ohio-5791.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5791

THE STATE OF OHIO, APPELLEE, *v.* ANDERSON, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State v. Anderson,* **Slip Opinion No. 2016-Ohio-5791.]**

*Criminal law—Double jeopardy—Defendant's double-jeopardy challenge to retrial following mistrial analyzed under Double Jeopardy Clause rather than Due Process Clause—Double Jeopardy Clause not offended by defendant's retrial after series of properly declared mistrials—Court of appeals' judgment affirming denial of motion to dismiss indictment affirmed and cause remanded to trial court.*

(No. 2015-1107—Submitted May 31, 2016—Decided September 14, 2016.)

APPEAL from the Court of Appeals for Mahoning County,

No. 11 MA 43, 2015-Ohio-2029.

_____

**KENNEDY, J.**

## I. Introduction

{¶ 1} In this discretionary appeal, we consider whether the Seventh District Court of Appeals erred in affirming the trial court's decision to deny the motion filed by appellant, Christopher L. Anderson, to dismiss his indictment. Anderson filed the motion to dismiss after the state gave notice of its intent to retry him following a series of mistrials that were declared in his case during the 14 years since his arrest.

{¶ 2} Anderson advances a single proposition of law:

> The Due Process Clause of the Fourteenth Amendment and Ohio Constitution, Article I, Sections 1, 2, 10, and 16 bar the State from making repeated attempts over a long course of time to convict a person by simply wearing him down when there is no new evidence of guilt.

{¶ 3} For the reasons that follow, we conclude that a double-jeopardy challenge to the retrial of a defendant following a mistrial is analyzed under the Double Jeopardy Clause rather than the more general Due Process Clause. We further conclude that the Double Jeopardy Clause is not offended when the state seeks to retry a defendant after a series of properly declared mistrials. Therefore, we affirm the judgment of the court of appeals, albeit on different grounds, and remand the matter to the trial court.

## II. Facts and Procedural History

{¶ 4} On the morning of June 3, 2002, Amber Zurcher was found dead inside her locked apartment. An autopsy was conducted, and the coroner concluded that Zurcher had died of asphyxiation due to ligature strangulation. The autopsy also revealed apparent bite marks on her left breast. Additional

analysis found Anderson's DNA under Zurcher's fingernails and on her breast. On August 29, 2002, Anderson was indicted for the murder.

{¶ 5} On May 27, 2003, prior to Anderson's first trial, the judge granted a defense motion in limine excluding any testimony regarding a prior incident in which Anderson allegedly had bitten and choked another woman. During the trial, however, without prompting by the prosecutor, a witness testified that Zurcher once told her that Anderson had "tried to strangle his ex-girlfriend." Thereafter, the judge declared a mistrial.

{¶ 6} Anderson's second trial began on November 18, 2003. Before the beginning of that trial, the state filed a motion in limine seeking a ruling regarding the admissibility of testimony from the other woman whom Anderson allegedly had bitten and choked. The judge allowed the woman to testify about the alleged incident. At the conclusion of the second trial, Anderson was found guilty of murder. On December 4, 2003, Anderson was sentenced to 15 years to life in prison.

{¶ 7} On December 26, 2003, Anderson appealed his conviction to the Seventh District Court of Appeals. Thirty-three months later, on September 1, 2006, the court of appeals reversed Anderson's conviction and remanded the matter for retrial, holding that the trial court had erred in allowing the testimony about the prior alleged incident. 7th Dist. Mahoning No. 03MA252, 2006-Ohio-4618, ¶ 1. We declined discretionary review. 112 Ohio St.3d 1443, 2007-Ohio-152, 860 N.E.2d 767.

{¶ 8} After several continuances—two of which the defense requested— the state brought Anderson to trial for a third time in December 2008. After the jury failed to reach a verdict, the trial court declared a mistrial.

{¶ 9} On February 13, 2009, Anderson's bond was reduced to $500,000. From March 27, 2009, to February 5, 2010, Anderson's trial was continued five times. Three of those continuances were at Anderson's request.

**{¶ 10}** The fourth trial began on April 26, 2010. During voir dire, a prospective juror commented in front of the entire venire of prospective jurors that one of the defense counsel appeared to be asleep. The court continued the case in order to seat a new venire. Nearly four months later, Anderson's trial resumed but ended in a mistrial when the jury failed to reach a verdict.

**{¶ 11}** In response to the state's notification that it intended to retry him, Anderson filed a motion to dismiss the indictment, alleging a violation of the Due Process and Double Jeopardy Clauses of the Ohio and United States Constitutions. The trial court denied Anderson's motion on February 15, 2011, and he appealed.

**{¶ 12}** On appeal, the state argued that the trial court's order denying Anderson's motion to dismiss was not a final, appealable order. On June 10, 2011, a divided panel of the Seventh District held that based on the "very specific facts of this case," the trial court's denial of the motion to dismiss was a final, appealable order.

**{¶ 13}** At the state's request, on December 13, 2011, the court of appeals granted en banc review. On September 25, 2012, the court released a tied en banc decision, which left undisturbed the panel's holding that the trial court's entry denying Anderson's motion to dismiss the indictment was a final, appealable order. 2012-Ohio-4390, ¶ 30.

**{¶ 14}** We accepted the state's discretionary appeal, held that the trial court's entry denying Anderson's motion to dismiss was a final, appealable order, and remanded the matter to the Seventh District for consideration of the merits of Anderson's appeal. 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 61.

**{¶ 15}** On remand, the court of appeals determined that the due-process and double-jeopardy challenges to Anderson's retrial were "intertwined" and therefore addressed them jointly. 2015-Ohio-2029, ¶ 7. From a Ninth District decision and decisions from Hawaii and Iowa, the Seventh District derived

4

several factors as "provid[ing] a useful tool for analysis" of Anderson's claims. *Id*. at ¶ 22. After applying these factors, the court of appeals affirmed the trial court's decision denying Anderson's motion to dismiss the indictment, holding that "in the absence of misconduct on the part of the state, a mistrial or hung jury does not bar retrial or retrials." *Id*. at ¶ 40.

{¶ 16} We accepted Anderson's discretionary appeal. 144 Ohio St.3d 1407, 2015-Ohio-4947, 41 N.E.3d 446.

{¶ 17} Anderson argues that the cumulative effect of "wearing him down" with yet another trial would violate the "fair play" guaranteed by the Due Process Clause. In support of this argument, Anderson emphasizes that he has been incarcerated during the 14 years since his arrest. He urges us to reverse the judgment of the court of appeals and decide the case based on fairness and not by "massag[ing] the factors."

{¶ 18} The state urges us to apply the factors identified by the Seventh District as relevant to this case and conclude that Anderson's constitutional due-process and double-jeopardy rights would not be violated by retrial.

{¶ 19} Amicus curie, the attorney general, argues that the Due Process Clause is not controlling when a more specific constitutional provision is applicable—in this case, the Double Jeopardy Clause. Moreover, the attorney general contends, when the protections afforded by the Double Jeopardy Clause are applied, the Constitution does not bar retrial following a properly declared mistrial. *See Richardson v. United States*, 468 U.S. 317, 326, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984).

### III. Law and Analysis

#### A. *Standard of review*

{¶ 20} Appellate courts apply a de novo standard of review when reviewing the denial of a motion to dismiss an indictment on the grounds of double jeopardy. *See State v. Betts*, 8th Dist. Cuyahoga No. 88607, 2007-Ohio-

5533, ¶ 20, citing *In re Ford*, 987 F.2d 334, 339 (6th Cir.1992); *see also State v. Mullins*, 5th Dist. Fairfield No. 12 CA 17, 2013-Ohio-1826, ¶ 13.

*B. The Due Process Clauses of the Ohio and United States Constitutions do not provide greater double-jeopardy protection than the Double Jeopardy Clauses*

**{¶ 21}** We interpret the Ohio Due Course of Law Clause, Section 16, Article I, as coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution because the language used in the two clauses is "virtually the same." *In re Hua*, 62 Ohio St.3d 227, 230, 405 N.E.2d 255 (1980). We have recognized that these clauses are equivalent since at least 1893. *See Salt Creek Valley Turnpike Co. v. Parks*, 50 Ohio St. 568, 579, 35 N.E. 304 (1893).

**{¶ 22}** There are several other provisions of the Ohio Constitution that provide similar due-process protections for Ohioans. We have considered Sections 1, 2, and 9 of Article I—guaranteeing inalienable rights, ensuring equality before the law, and declaring the inviolability of private property, respectively—to "run parallel with the protections of the Fourteenth Amendment to the United States Constitution." *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 545, 38 N.E.2d 70 (1941). Additionally, we have considered United States Supreme Court decisions "as giving the true meaning of the guaranties of the Ohio Bill of Rights." *Id*.

**{¶ 23}** Because we have declared that these state and federal constitutional provisions are coextensive, we can rely on decisions of both this court and the United States Supreme Court in construing them. Although the proposition of law that Anderson forwards—that the Due Process Clause should control over the more specific Double Jeopardy Clause—is an issue of first impression in this court, the United States Supreme Court has addressed the issue.

**{¶ 24}** The more specific provisions of the federal Bill of Rights were the method "that the[ ] Framers sought to restrict the exercise of arbitrary authority by

6

the Government in particular situations." *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion). "[T]he expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between *liberty and order*." (Emphasis added.) *Medina v. California*, 505 U.S. 437, 443, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). " '[W]e have defined the category of infractions that violate "fundamental fairness" very narrowly' based on the recognition that, '[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.' " *Id.*, quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

{¶ 25} In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the United States Supreme Court explained: "Because the Fourth Amendment provides an explicit textual source of constitutional protection against * * * physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing" all claims that law-enforcement officers have used excessive force. *Id.* at 395.

{¶ 26} Since deciding *Graham*, the Supreme Court has consistently declined to separately consider substantive due process when a more specific provision of the United States Constitution applies. As the court has explained: "*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), fn. 7; *accord Albright*, 510 U.S. at 273, 114 S.Ct. 807, 127 L.Ed.2d 114. Therefore, it is a general rule of

constitutional interpretation that when a specific constitutional provision applies, it controls over more general notions of substantive due process.

{¶ 27} Of particular relevance here, the United States Supreme Court has examined whether the Due Process Clause provides greater double-jeopardy protection than the Double Jeopardy Clause. In *Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003), the Supreme Court considered double-jeopardy and due-process challenges to the imposition of a defendant's death sentence on retrial following the reversal on appeal of his life sentence. Separately from his double-jeopardy claim, Sattazahn argued that he had constitutionally protected life and liberty interests under the Due Process Clause in the finality of the life sentence that the jury imposed at his first trial. *Id*. at 115. The Supreme Court rejected this argument, declining Sattazahn's "invitation to hold that the Due Process Clause provides greater double-jeopardy protection than does the Double Jeopardy Clause." *Id*. at 116.

{¶ 28} While the underlying issue in *Sattazahn* is distinguishable from Anderson's argument that the cumulative impact of his multiple trials offends the Constitution, we nevertheless conclude that as in *Sattazahn*, the generalized due-process claim raised in this case "is nothing more than [the] double-jeopardy claim in different clothing." *Id*. Applying the Due Process Clause in a situation that is governed by the Double Jeopardy Clause would require us to apply the wrong constitutional test. *See Graham*, 490 U.S. at 395, 109 S.Ct. 1865, 104 L.Ed.2d 443.

{¶ 29} Government action violates due process only if it " ' "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." ' " *Medina*, 505 U.S. at 445, 112 S.Ct. 2572, 120 L.Ed.2d 353, quoting *Patterson v. New York*, 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934). The Double Jeopardy Clause deals specifically

with the issue whether a defendant may be retried after a trial court has declared a mistrial.

{¶ 30} We categorically reject the Seventh District's conjoined due-process and double-jeopardy analysis and the factors that that court applied in this case. *See* 2015-Ohio-2029 at ¶ 22. Instead, we agree with the argument presented by amicus curie that the Due Process Clause is not controlling when a more specific constitutional provision is applicable. Therefore, we follow the lead of the United States Supreme Court and conclude that when a defendant challenges his or her retrial, the Double Jeopardy Clause controls over the more general Due Process Clause.

*C. The Double Jeopardy Clauses of the federal and Ohio Constitutions do not bar a retrial after the reversal of a conviction on appeal and multiple mistrials*

{¶ 31} Having determined that the applicable constitutional provision is the Double Jeopardy Clause, we next consider whether double jeopardy is offended when the state retries a defendant after reversal of his or her conviction on appeal and multiple mistrials have been declared. We apply the same analysis to claims brought under the federal and Ohio Double Jeopardy Clauses because we have recognized that " '[t]he protections afforded by the two Double Jeopardy Clauses are coextensive.' " *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 14, quoting *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7.

{¶ 32} The state is entitled to retry a defendant when a trial court has declared a mistrial after the jury failed to reach a verdict. *Richardson*, 468 U.S. at 326, 104 S.Ct. 3081, 82 L.Ed.2d 242; *State v. Lovejoy*, 79 Ohio St.3d 440, 445-446, 683 N.E.2d 1112 (1997). "Our society * * * retains a genuine interest in making certain that the guilty are punished." *State v. Widner*, 68 Ohio St.2d 188, 192, 429 N.E.2d 1065 (1981). However, when a mistrial was "instigated by prosecutorial misconduct designed to provoke [the] mistrial," retrial is barred by

double jeopardy. *State v. Glover*, 35 Ohio St.3d 18, 517 N.E.2d 900 (1988), syllabus; *see also Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (double jeopardy bars retrial if the prosecutor has engaged in misconduct intended to "goad" the defense into moving for a mistrial); *Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) ("a prosecutor or judge [is prohibited] from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict").

{¶ 33} Moreover, the federal and Ohio Double Jeopardy Clauses generally are not offended when the state retries a defendant after a conviction is reversed on appeal. *Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, at syllabus; *see also United States v. Tateo*, 377 U.S. 463, 465, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) (it is a "well-established part of our constitutional jurisprudence" that the Double Jeopardy Clause does not bar a retrial after a reversal on appeal). But if a conviction is reversed on appeal because "the state fails to present sufficient evidence to prove every element of the crime," then the state "should not get a second opportunity to do that which it failed to do the first time." *Lovejoy* at 450.

{¶ 34} Anderson argues, however, that it is the cumulative effect of the reversal of his first conviction on appeal and the numerous mistrials during the past 14 years that offends fair play and is "itself a constitutional violation." But Anderson has not pointed to anything in the text or history of the federal or Ohio Double Jeopardy Clauses or the precedents interpreting them that supports his position. Moreover, Anderson has not identified any other similar case in which a court dismissed, on double-jeopardy grounds, an indictment after the reversal of a conviction on appeal coupled with multiple mistrials. Instead, Anderson relies on a series of decisions that are readily distinguishable from this case.

{¶ 35} In *United States v. Ingram*, when a mistrial was declared after the jury failed to reach a verdict at a defendant's second trial, the trial court sua sponte dismissed the indictment without objection by the government. 412 F.Supp. 384 (D.D.C.1976). Nearly one month later, the government filed a motion for reconsideration. In denying the government's motion, the court noted that "[t]his is, of course, not a case of double jeopardy. * * * It is simply a matter of fair play." *Id*. at 385. In support of its decision, the court stated that when "a substantial majority of the jury members" "disagree so conclusively when not even faced with conflicts in the proof," there is reasonable doubt. *Id*. at 386.

{¶ 36} In *State v. Moriwake*, the Supreme Court of Hawaii held that the federal Double Jeopardy Clause "did not mandate dismissal" of the defendant's indictment after a series of mistrials. 65 Haw. 47, 54, 647 P.2d 705 (1982). However, the court determined, the indictment could be dismissed on the basis of the court's inherent judicial power under the Hawaii Constitution. *Id*. at 55.

{¶ 37} In *State v. Abbati*, the New Jersey Supreme Court disclaimed reliance on the Double Jeopardy Clause when it reversed and remanded an order of the trial court dismissing an indictment after two mistrials. 99 N.J. 418, 425-427, 493 A.2d 513 (1985). Instead, the court created a multifactor test relying on its inherent judicial authority and power over the courts of New Jersey for the proper administration of criminal justice and ordered the trial court to apply that test on remand. *Id*. at 432-436.

{¶ 38} Anderson has not argued that the trial court erred in failing to dismiss the indictment because the evidence is insufficient. Nor has he identified any independent provision of the federal or Ohio Constitution or of Ohio law that would give this court authority to dismiss an indictment under these circumstances. Anderson's exclusive argument rests on the cumulative effect of the retrials.

**{¶ 39}** While this is an issue of first impression for us, our sister court to the north has examined a case in which a defendant moved to dismiss the charges after he was brought to trial for a third time after two mistrials. *See People v. Sierb*, 456 Mich. 519, 522, 581 N.W.2d 219 (1998). In *Sierb*, the defendant conceded that the Double Jeopardy Clause did not bar his third trial. *Id*. at 522, fn.6. Instead, Sierb argued that a third trial would violate his substantive due-process rights. The Michigan Supreme Court rejected this "general claim of governmental unfairness" because Sierb could not explain why three trials were unconstitutional but two trials were not. *Id*. at 530-531.

**{¶ 40}** The Second Circuit Court of Appeals has also examined whether a defendant may be retried following multiple mistrials. In *United States v. Castellanos*, 478 F.2d 749 (2d Cir.1973), the trial court had dismissed an indictment on double-jeopardy grounds because two prior trials had ended in a mistrial after each jury failed to reach a verdict. In reversing the trial court, the Second Circuit held that the Double Jeopardy Clause did not bar the government from retrying the defendant because each mistrial was properly declared. *Id*. at 752.

**{¶ 41}** These holdings of the Michigan Supreme Court and the Second Circuit are consistent with the United States Supreme Court's holding in *United States v. Perez*, 22 U.S. 579, 580, 6 L.Ed. 165 (1824), "the fountainhead decision construing the Double Jeopardy Clause in the context of a declaration of a mistrial over a defendant's objection," *Illinois v. Somerville*, 410 U.S. 458, 461, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). In *Perez*, the Supreme Court held that a defendant may be retried when the defendant "has not been convicted or acquitted." *Perez* at 580. The court reasoned that "the law has invested Courts of justice with the authority to discharge a jury from giving any verdict" and declare a mistrial when "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id*. In

reaching that determination, a court should "exercise * * * sound discretion on the subject," and "the power ought to be used with the greatest caution, under urgent circumstances." *Id.*

{¶ 42} The central holding of *Perez* is that a conviction or acquittal creates a final result, which in turn triggers the protections of the Double Jeopardy Clause. Where there is no finality, there can be no double-jeopardy violation. The only caveat in *Perez* is that the trial court must have properly declared the mistrial.

{¶ 43} Anderson does not argue that any of the mistrials declared in his case constituted an abuse of discretion. Moreover, there is nothing in the record to suggest that Anderson objected to the trial court's sua sponte declaration of a mistrial or that Anderson requested that the court further instruct the jury and order the jury to resume deliberations. Undisputedly, a final result was never achieved. Anderson's sole argument rests on the length of time the process has taken and the fact that he has been incarcerated the entire time.

{¶ 44} However, Anderson's continued incarceration is a result of his inability to post the required bond set by the trial court. The question of whether that bond is appropriate, under these circumstances, is not before us.

{¶ 45} While we are deeply troubled that a final resolution in this case has not been reached, there is no prohibition in the federal or Ohio Double Jeopardy Clauses that bars a defendant's retrial after several mistrials have been declared. A double-jeopardy review is triggered only when a final resolution has been made, and that has not occurred here.

## IV. Conclusion

{¶ 46} We conclude that a double-jeopardy challenge to the retrial of a defendant following a mistrial is analyzed under the Double Jeopardy Clause rather than the more general Due Process Clause. We further conclude that the Double Jeopardy Clause is not offended when the state seeks to retry a defendant

after a series of properly declared mistrials. Therefore, we affirm the judgment of the court of appeals, albeit on different grounds, and remand the matter to the trial court.

Judgment affirmed<br>and cause remanded.

O'DONNELL and FRENCH, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

LANZINGER, J., concurs in judgment only, with an opinion joined by PFEIFER, J.

O'NEILL, J., dissents.

_____

**LANZINGER, J., concurring in judgment only.**

{¶ 47} Although I agree that the judgment of the court of appeals should be affirmed, I respectfully disagree with the reasoning of the plurality opinion and therefore concur in judgment only.

{¶ 48} In rejecting the application of due-process considerations in favor of an analysis limited to double-jeopardy considerations, the plurality cites this court's previous decisions holding that the Due Course of Law Clause of the Ohio Constitution, Section 16, Article I, is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Plurality opinion at ¶ 21. But we have also held that "[t]he Ohio Constitution is a document of independent force." *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. This court has the ability to recognize enhanced due-process protections contained within Section 16, Article I of the Ohio Constitution. "As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups." *Id.*

**{¶ 49}** In recent years, we have been receptive to the argument that the Ohio Constitution provides enhanced protections. In *In re A.G.*, ___ Ohio St.3d ___, 2016-Ohio-3306, __ N.E.3d ___, for example, we held that juveniles receive double-jeopardy protections that go beyond those provided by the United States Constitution. *Id.* at ¶ 12-13. In my view, the Ohio Constitution can indeed provide due-process protection that exceeds that which is provided by the United States Constitution.

**{¶ 50}** I do not agree that the due-process claim raised by appellant, Christopher Anderson, is nothing more than a double-jeopardy claim in different clothing. Double-jeopardy protections guard against three potential abuses: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10, citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds*, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

**{¶ 51}** Anderson does not contend that his indictment should be dismissed solely because he has been subjected to multiple trials for the same alleged offense. He argues that the cumulative effect of these drawn-out abortive trials placed him in a position where he cannot effectively defend his liberty and that this prosecution has reached a point where yet another trial is fundamentally unfair.

**{¶ 52}** It has been 14 years since Anderson was indicted for murder in violation of R.C. 2903.02, an offense subject to a mandatory prison sentence of 15 years to life, *see* R.C. 2929.02(B). If Anderson's trial were to be held tomorrow, he would presumably receive credit for time served and, as unusual as it may sound, he would be eligible for parole a relatively short time after his conviction. This is an extraordinary situation. On the one hand, Anderson is charged with a

horrific crime, and the public and the victim's loved ones certainly have an interest in seeing justice served in this case. On the other hand, Anderson remains unconvicted of that crime, and his 14 years of continued incarceration seems to violate his fundamental interest in personal liberty.

{¶ 53} Nevertheless, despite the continuing delays in this case (some of which Anderson concedes he initiated), it cannot be argued that Anderson has been incarcerated in excess of the mandatory period of time that he would receive if he were actually convicted. That, to me, would violate fundamental fairness. Thus, I would grant the motion to dismiss the indictment on due-process grounds only if he had already served the maximum prison term that could have been imposed for a conviction on the offense for which he was indicted.

{¶ 54} While I would hold that the facts of this case do not compel a conclusion that Anderson is entitled to have his motion to dismiss the indictment granted, I do not agree with the plurality that the Due Course of Law Clause of the Ohio Constitution provides no protection to defendants who are incarcerated for unfair and excessive lengths of time without having been convicted of a crime.

{¶ 55} I accordingly concur in judgment only.

PFEIFER, J., concurs in the foregoing opinion.

_____

Paul J. Gains, Mahoning County Prosecuting Attorney, and Ralph M. Rivera, Assistant Prosecuting Attorney, for appellee.

John B. Juhasz, for appellant.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, and Sarah Leatherman, Assistant Attorney General, urging affirmance for amicus curiae, Ohio Attorney General Michael DeWine.

_____